**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KEVIN STUART MOORE, JR.,         *

Plaintiff         *

v         *        Civil Action No. ELH-16-4147

EASTERN CORRECTIONAL      *
INSTITUTION, et al.,
         *
Defendants
         ***

## MEMORANDUM OPINION

Plaintiff Kevin Stuart Moore, Jr., a self-represented State inmate confined to the Eastern Correctional Institution in Westover, Maryland ("ECI"), filed suit against defendants Sergeant William D. Jones; Correctional Officer II Ivan Tilghman; Warden John Wolfe; and ECI. ECF 1. Moore subsequently filed an Amended Complaint. ECF 4. He alleges a failure to protect claim based on the events of December 1, 2016, when he was attacked by another inmate while housed at the Poplar Hill Pre-Release Unit ("PHPRU"), which is a part of ECI. ECF 4 at 3. He seeks $200,000 in damages. *Id.* at 4.

Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 17. It is supported by a Memorandum (ECF 17-1) (collectively, the "Motion") and numerous exhibits. Plaintiff opposes the Motion. ECF 19. Defendants did not file a reply.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be granted.

## I. Factual Background

On December 1, 2016, Moore was attacked by another inmate, Timothy Covington. ECF

4 at 3. Plaintiff states that at that time, he was "under the watch" of Sgt. Jones and Ofc. Tilghman. *Id.* Plaintiff received a black eye and a possible fracture to his left eye. *Id.* According to plaintiff, the assault "could have been avoided if proper security was in place under Warden Wolfe." *Id.*

Defendants indicate that on December 1, 2016, plaintiff reported to the medical office with a visible injury to his left eye. ECF 17-5 (Declaration of Jones), ¶ 4; ECF 17-6 (Memorandum of 12/1/16 from Sgt. Jones to Capt. K. King); ECF 17-7 (Declaration of Tilghman), ¶ 4; ECF 17-8 at 2 (Tilghman Notice of Incident). Investigation revealed that plaintiff and inmate Covington, who was assigned as a food service worker in the officer's dining room, had been involved in a physical altercation regarding missing utensils. Covington, who was responsible for the utensils, believed that plaintiff had stolen them. ECF 17-5, ¶ 5; ECF 17-8 at 2; ECF 17-7, ¶ 5; ECF 17-3 (Declaration of Dietary Officer Twilley), ¶¶ 7-9; ECF 17-4 at 2-3 (Twilley Notice of Incident); ECF 17-6 at 2 (Jones Memorandum).

Both inmates were seen by medical staff for injuries consistent with a physical altercation. ECF 17-5 (Jones Declaration), ¶ 8. Both inmates were also charged with rule violations. Plaintiff was charged with assault or battery on an inmate and stealing State property or possessing State property identified as stolen. ECF 17-17 at 1 (Moore's Inmate Hearing Record). Plaintiff accepted a plea agreement for 30 days of segregation and the revocation of 30 days of good conduct credit. *Id.* at 4.

Plaintiff filed a request for administrative remedy (ARP") on December 12, 2016. ECF 17-19 at 2. He claimed he sustained injuries during the incident on December 1, 2016, as a result of poor security measures. *Id.* The ARP was dismissed on December 15, 2016. *Id.* Thereafter, on December 29, 2016, plaintiff filed an appeal to the Commissioner of Corrections, claiming that

the warden had not responded to his ARP.  *Id.* at 3. The appeal was dismissed on December 29, 2016.  *Id.*  Plaintiff did not pursue his grievance with the Inmate Grievance Office ("IGO"). ECF 17-20) (Declaration of Russell Neverdon, Sr., Executive Director of the IGO), ¶ 3.

Additional facts are included in the Discussion.

## II.  Standard of Review

### A.  Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, ___ U.S. ____, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to ensure that defendants are provided with "fair notice" of the claim(s) made against them and the "grounds" for entitlement to relief.  *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93,

112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

"When determining whether a complaint fails to comply with Rule 8(a), 'courts have looked to various factors, including the length and complexity of the complaint, *whether the complaint was clear enough to enable the defendant to know how to defend himself*, and whether the plaintiff was represented by counsel.'" *Rush v. Am. Home Mortg.*, Inc., WMN-07-854, 2009 WL 4728971, at *4 (D. Md. Dec. 3, 2009) (emphasis added) (quoting *North Carolina v. McGuirt*, 114 Fed. App'x. 555, 558 (4th Cir. 2004) (per curiam)) (internal citations omitted). A court may properly dismiss a complaint under Rule 12(b)(6) for failure to comport with Rule 8(a) if the complaint "does not permit the defendants to figure out what legally sufficient claim the plaintiffs are making and against whom they are making it." *McGuirt*, 114 Fed. App'x at 559.

Thus, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual

allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co.*, *supra*, 637 F.3d at 440 (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).  But, a court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012).

## B.  Summary Judgment

The Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  ECF 29.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed Appx. 220, 222 (4th Cir. 2016) (per

curiam).  But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).  This discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id*. at 165, 167.

No Scheduling Order has been issued in this case setting forth deadlines for discovery.  *See* Local Rule 803.1 (D. Md. 2016).  Absent a Scheduling Order, the parties generally are not entitled to engage in discovery.  And, summary judgment ordinarily is inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs.*

*Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an

adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not filed an affidavit in compliance with Rule 56(d). Nor is there any indication that any additional materials would create a genuine issue of material fact. As such, with respect to the two correctional officers, I am satisfied that it is appropriate to address the Motion as one for summary judgment, because it will facilitate resolution of this case. As to the Warden and ECI, I shall construe the Motion as a motion to dismiss.

### C.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates

entitlement to judgment as a matter of law.").

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). As indicated, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States*

*Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Moreover, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC,* 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp.*, 477 U.S. at 323–24).

### III. Discussion

#### A.

Defendants raise the affirmative defense of non-exhaustion and assert that the suit must be dismissed, pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. Under the PLRA, inmates are required to exhaust "such administrative remedies as are available"

before filing suit. 42 U.S.C. § 1997e(a). The statute provides, in part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.*

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd,* 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). A claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, ____ U.S. ____, 136 S. Ct. 1850, 1857 (2016). And, a court ordinarily may not excuse a failure to exhaust. *Id.* at 1856

(citing *Miller v. French* 530 U.S. 327, 337 (2000)) ("The mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion").

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).

Of import here, exhaustion requires a prisoner to pursue administrative grievances until a final denial of the claims is received, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (stating that prisoner must follow all administrative steps to satisfy the exhaustion requirement, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette,* 517 F.3d at 725, 729; *see Langford v. Couch,* 50 F.

Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). But, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross*, *supra*, 136 S. Ct. 1850, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855.

The Fourth Circuit addressed the meaning of "available" remedies in *Moore v. Bennette,* 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

And, more recently, the *Ross* Court stated that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30.

However, the *Ross* Court also identified three kinds of circumstances in which an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does

not come into play." 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an "administrative remedy procedure" available to Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2017 Repl. Vol.), Correctional Services Article ("C.S."), §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining ARP); OPS.185.0002.02.[1] The grievance procedure applies to the submission of "a

---

[1] OPS.185.0002 is an Executive Directive created by the DPSCS, titled "Administrative Remedy Procedure (ARP)" ("ARP Directive"). The ARP Directive was submitted as a defense exhibit in the case of *Payton v. Bishop*, ELH-15-3648, ECF 16-2. Effective August 14, 2015, the ARP Directive established the "policy and procedures for an Administrative Remedy Procedure (ARP) . . . to provide a method for resolving an inmate complaint related to specific conditions of confinement." *Id.*

"[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 115 (2011); *Philips*, 572 F.3d at 180. In particular, pursuant to Fed. R. Evid. 201, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute," in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

grievance against an official or employee of the Division of Correction ['DOC'] . . . ." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC]…against any officials or employees of the [DOC]…arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). Ordinarily, an inmate must exhaust the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; DCD 185-002 (effective August 27, 2008).

To pursue a grievance, a prisoner confined in a DOC facility may file with the Inmate Grievance Office a grievance against any DOC official or employee. C.S. § 10-206(a). However, if the DOC institution has a grievance procedure that is approved by the IGO, the prisoner may be required to follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b); *see also* OPS.185.0002.02.10. A grievance must be filed in writing, in a format approved by the IGO or by use of an ARP form. COMAR 12.07.01.04(A). And, the grievance must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official." OPS.185.0002.05C(1). In C.S. § 1-101(k), a "managing official" is defined "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DOC, each facility's warden is responsible for the administrative remedy procedure at the institutional level. DCD # 185-003VI.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. In that circumstance, the prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee. OPS.185.0002.05C(2). For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. DCD # 185-004VI. *See also* C.S. §§ 10-206; COMAR 12.07.01.03; COMAR 12.07.01.05B.

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-207; COMAR 12.07.01.05B; *see also* DCD 185-002, § VI(N)(1). When filing with the IGO, a prisoner is required to include copies of the the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.06.

An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). If a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; C.S. § 10-209; COMAR 12.07.01.07. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; C.S. § 10-209; COMAR 12.07.01.07D; *see also* Md. Code, Title 10 of the State Government Article.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A. But, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make the final agency

determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in a Maryland circuit court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. A party aggrieved by the decision of the circuit court may seek leave to appeal to the Maryland Court of Special Appeals. C.S. § 10-210(c). But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See*, *e.g.*, *Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The ARP process applies to many kinds of inmate complaints that "relate to or involve a prisoner's 'conditions of confinement.'" *Massey v. Galley*, 392 Md. 634, 651, 898 A.2d 951, 960 (2006) (citation omitted). However, the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Id.* at 646, 898 A.2d at 958 (citation omitted). For example, the ARP process does not apply to case management decisions, which are to be directly grieved to the IGO. OPS.185.0002.05F(1). Nor does it apply to Maryland Parole Commission procedures, decisions to withhold mail, or Prison Rape Elimination Act related claims. OPS.185.0002.05F(2), (4), (5). Those categories of complaints are addressed through separate administrative processes. *Id.*[2]

---

[2] Also, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000). Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the

A prisoner may pursue the ARP process to allege that correctional officers used excessive force. But, such an ARP may be procedurally dismissed if the Internal Investigations Division decides to conduct an investigation into the use of force incident at issue in the ARP. OPS.185.0002.05.E(6) & K(3)(e). If this procedural dismissal indicates that no further action may be taken through the ARP process, a prisoner may then file a grievance directly with the IGO, as there would be no further administrative remedies available through the ARP process. C.S. § 10-206(b).[3]

Here, the undisputed evidence demonstrates that on December 12, 2016, plaintiff filed an ARP concerning the events outlined in his complaint. ECF 17-19 at 2. The ARP was dismissed on December 15, 2016. *Id.* On December 29, 2016, plaintiff filed an appeal, which was dismissed on December 29, 2016. *Id.* at 3. In his Opposition to the Motion (ECF 19), plaintiff indicates that he sent his letter to the IGO on February 13, 2017. ECF 19 at 1. The record reflects that plaintiff did not timely file a complaint with the IGO. ECF 17-20.

"Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies." *Kitchen v. Ickes*, 116

---

grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

[3] With respect to disciplinary procedures, if a prisoner is found guilty of a rule violation, the prisoner is entitled to appeal the hearing officer's decision or sanction to the warden of the facility where he or she is incarcerated. COMAR 12.02.27.33(A)(1),(2). If the prisoner does not file a written appeal with the warden within fifteen days of receipt of the hearing officer's decision, he or she is considered to have waived the right to appeal. *Id.*, COMAR 12.02.27.33(A)(3). If the warden affirms the hearing officer's guilty finding or sanction, the prisoner may then appeal to the IGO. COMAR 12.02.27.33(D); *see also* COMAR 12.07.01.05 and .06C. When filing this appeal with the IGO, the prisoner is required to include a copy of the initial notice of inmate rule violation, the hearing record, the appeal to the warden, and the warden's response to the appeal. COMAR 12.07.01.04(B)(9)(b).

F.Supp. 3d 613, 624 (D. Md. 2015) (citing *Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001)).

Moreover, exhaustion is a precondition to filing suit in federal court. *Kitchen*, 116 F.Supp. 3d at 625 (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999)) (prisoner may not exhaust administrative remedies during the pendency of a federal suit)).

Plaintiff failed to exhaust his administrative remedies prior to instituting his suit, because he failed to pursue his grievance with the IGO. On this basis, defendants are entitled to summary judgment.

## B.

Apart from plaintiff's failure to exhaust, ECI is not a person under 42 U.S.C. § 1983. Therefore, it is not amenable to suit. *See Glover v. E. Corr. Inst.*, TDC-15-0598, 2016 WL 676361, at *2 (D. Md. Feb. 17, 2016); (ECI is not a person under § 1983); *see also Wiley v. Buncombe Cty.*, 846 F. Supp. 2d 480, 486 (W.D.N.C.), *aff'd*, 474 F. App'x 285 (4th Cir. 2012) (jail is not a person under § 1983); *Sweet v. N. Neck Reg'l Jail*, 857 F. Supp. 2d 595, 597 (E.D. Va. 2012) (same); *Powell v. Cook Cty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993) (same). On this basis, the suit is subject to dismissal.

## C.

The allegations against Warden Wolfe do not support a claim based on supervisory liability. *See*, *e.g.*, *Thompson v. Virginia*, 878 F.3d 89 at 110-11 (4th Cir. 2017).

Plaintiff fails to allege any specific facts against Warden Wolfe that indicate wrongdoing on his part. To establish a supervisory liability claim in a § 1983 action, plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to how deliberate indifference to or tacit authorization of the alleged offensive practices; and (3)

that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994) (citations omitted).

Here, the suit is devoid of specific allegations of wrongdoing committed personally by Warden Wolfe. There are no facts that have been alleged that he personally engaged in conduct that infringed on a constitutionally protected interest. Nor has plaintiff asserted facts to demonstrate supervisory liability.

In view of the foregoing, the claim against the Warden is subject to dismissal.

### D.

Even if plaintiff had properly exhausted his administrative remedies prior to bringing this case, his claim nevertheless fails.

Plaintiff alleges that defendants were deliberately indifferent in failing to provide adequate supervision and security to protect him and, as such, his right to be free from cruel and unusual punishment has been violated. The right to be free from cruel and unusual punishment includes the right to be protected from a substantial risk of serious harm at the hands of other inmates. *See Farmer v. Brennan,* 511 U.S. 825 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016); *Makdessi v. Fields*, 789 F.3d 126 (4th Cir. 2015); *Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir. 1997); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor*, 817 F.3d at 127 (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. Of relevance here, corrections officers have "'a duty to protect prisoners from violence at the hands of other prisoners,' for '[b]eing violently assaulted in prison is simply not part of the

penalty that criminal offenders pay for their offenses against society.'" *Id.* (citations omitted).

In order to prevail on an Eighth Amendment claim for failure to protect from violence, the prisoner must establish that prison personnel exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). To be sure, "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 833-34 (citations omitted). But, in *Farmer* the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339-403 (4th Cir. 1997). As is the case when evaluating prison medical care, a two-part inquiry that includes both an objective and a subjective component must be satisfied before an official is liable for failure to protect a prisoner. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered may preclude summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety."

*Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence," so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128; *see Makdessi*, 789 F.3d at 126. Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844.

Here, plaintiff alleges that he would not have been attacked if unspecified proper security measures had been followed. Defendants do not dispute that plaintiff was involved in a physical altercation with Covington, and they acknowledge that he sustained a visible injury to his left eye. *See* ECF 17-1 at 3. Who instigated the affray, however, is not determinative of plaintiff's constitutional claim.

The record demonstrates that the altercation between plaintiff and inmate Covington was spontaneous, arising out of a dispute over missing kitchen property. Covington was assigned the responsibility for the "Blue Ware," and he believed plaintiff stole some of it. ECF 17-3, ¶ 7; ECF 17-4.

In plaintiff's statement provided after the assault, plaintiff advised that Covington confronted him about the missing property, and plaintiff tried to avoid the situation by staying in the day room. ECF 17-10 at 2. He did not advise any correctional personnel of the threat, however. *Id.* Jones and Tilghman aver that they were not aware of the disagreement over the missing property until after the assault, and neither was aware of a risk of harm to plaintiff. ECF

17-5 (Declaration Jones), ¶¶ 5 & 6 and ECF 17-7 (Declaration of Tilghman) ¶¶ 5 & 7. There is simply nothing in the record to indicate that any of the named defendants were aware that Covington posed a risk of harm to plaintiff. Moreover, plaintiff has failed to identify which security measures were lacking and how any additional security measures could have prevented the spontaneous assault on him.

### IV.  Conclusion

For the foregoing reasons, defendants' Motion will be GRANTED and judgment will be ENTERED in favor of defendants and against plaintiff.  A separate Order follows.

January 17, 2018_____                 _____/s/_____
Date                                  Ellen L. Hollander
                                      United States District Judge